CHARLES P. STRATTON, Receiver of "The Camden Iron Manufacturing Company," *vs.* HENRY ALLEN.

16 229
51 368
16 229
54 55

1. Objections relating to the *regularity* of a judgment at law, or to the validity of the *instrument* upon which it is founded, constitute no ground for the interference of equity.

2. If the instrument upon which the judgment was entered, was without consideration or invalid, or if the judgment was unauthorized or illegal, the remedy for a party aggrieved is by application to the court in which it was entered, or by writ of error.

3. A judgment can only be impeached in a court of equity for fraud in *its* concoction, and not for fraud in the instrument upon which it is founded.

4. A member or director of a corporation may make contracts with it, like any other individual, and when the contract is made, the director stands, as to the contract, in the relation of a stranger to the corporation.

5. Corporations that have the power to borrow money, have also the necessary power, as well as the legal right, to give obligations for its repayment in any form not expressly forbidden by law. The fact that the security was given, and the judgment confessed to a director, cannot destroy its validity.

6. A judgment confessed by a party on the eve of insolvency, without any view or expectation of obtaining aid to enable him to continue his business, affords strong evidence that it was done in contemplation of insolvency, and with the view of preferring creditors.

7. In the distribution of the funds of an insolvent company, a judgment

confessed in contemplation of insolvency and with the view of preferring creditors, is entitled to no priority. The debt will be paid *proportionably* with the other debts of the company.

*Wilson* and *Carpenter*, for complainant.

*Dayton* and *Browning,* for defendant.

Cases cited by complainant's counsel. *Rawnsley* v. *Trenton Mut. Life and Fire Ins. Co.,* 1 *Stockt.* 347; *Holcomb's Ex'rs* v. *Bridge Co., Ibid.* 457; 2 *Green's Ch. R.* 266; *Nix. Dig.* 371, § 2; *Angell & Ames on Corp.,* § 600; *Wood* v. *Dummer,* 3 *Mason* 308; *Lewin on Trusts* 460–61; *Ex parte James,* 8 *Vesey* 348; *Cumberland Coal and Iron Co.* v. *Sherman,* 8 *Law Reg.* 333, (*April,* 1860).

Cases cited by defendant's counsel. *Wiggins* v. *Armstrong,* 2 *Johns. Ch. R.* 144; *Wintringham* v. *Wintringham,* 20 *Johns. R.* 296; *Brinkerhoff* v. *Brown,* 4 *Johns. Ch. R.* 671; *Williams* v. *Brown, Ibid.* 682; *McDermutt* v. *Strong, Ibid.* 687; *Cooper's Eq. Pl.* 149; *Mitford's Eq. Pl.* 115; *Hunt* v. *Field,* 1 *Stockt.* 36; *Williams* v. *Michenor,* 3 *Ibid.* 524; 2 *Story's Eq. Jur.,* § 1575; 3 *Johns. Ch. R.* 275; 4 *Ibid.* 85; 5 *Ibid.* 555; 6 *Ibid.* 235; 20 *Johns. R.* 668; *Hoyt* v. *Hoyt,* 1 *Harr.* 138; *Angell & Ames on Corp.,* § 233; *Rogers* v. *The Danby Universalist Society,* 19 *Vt.* 191; *Sawyer* v. *The M. E. Soc.,* 18 *Vt.* 409; 6 *Vt.* 76.

THE CHANCELLOR. On the eleventh of April, 1860, "The Camden Iron Manufacturing Company" executed, under their corporate seal and the signature of their president, to Henry Allen, then being a director of said company, two bonds, with warrants of attorney to confess judgments thereon; one for $2399.75, payable on the day of its date, the other for $10,000, payable in five days thereafter. Judgment in the Camden Circuit Court was entered upon the one bond on the fourteenth of April, and upon the other on the fifth

Stratton *v*. Allen.

of August, 1860.   On the twenty-fifth of September, 1860, a bill was filed to have the corporation declared insolvent, and on the twentieth of October, a receiver was appointed. The assets are insufficient to satisfy the debts of the company. This bill is filed by the receiver to set aside the judgments in favor of Allen, as fraudulent and void, or to establish the right of the other creditors to share ratably in the distribution of the funds.   The principal objections urged against the validity of the judgments, are—

1. That the affidavit upon which the judgments were entered, was insufficient.

2. That the board of directors, by whom the order was made for the execution of the bonds and warrants, was not duly organized; a quorum not being present.

3. That Allen, as a director, could not legally vote in favor of an order to execute the bonds to himself.

4. That the order of the directors authorizes the execution of a bond only, and confers no authority to execute a warrant of attorney.

5. That the bonds and warrants are not countersigned by the secretary, as required by the by-laws of the company.

6. That the judgments are fraudulent as against creditors, because they were given to a director of the company, whereby he obtains wrongfully a preference over other creditors equally meritorious.

7. That the judgments were confessed to Allen when the company was insolvent, or in contemplation of insolvency, for the purpose of giving him preference over other creditors.

So far as these objections relate to the regularity of the judgments, or to the validity of the instruments upon which they are founded, they constitute no ground for the interference of this court.   The defendant is in possession of the judgments of a court of common law, having jurisdiction of the subject matter.   If the instruments upon which those judgments were entered, were without consideration or invalid, or if the judgments themselves are unauthorized or illegal, the remedy for a party aggrieved would be by ap-

plication to the court in which the judgment is entered, or by writ of error. They are questions exclusively for the cognizance of those courts. It seems to be conclusively settled that a judgment can only be impeached in a court of equity for fraud in its concoction. 2 *Story's Eq.*, § 1575; *Shottenkirk* v. *Wheeler*, 3 *Johns. Ch. R.* 275; *DeRiemer* v. *DeCantillon*, 4 *Ibid.* 85; *French* v. *Shotwell*, 6 *Ibid.* 235.

Whether the judgments are irregular or erroneous, are exclusively questions of law. So long as they remain in force, they must be received in this court as valid. It was suggested upon the argument, that this court would at least give to the complainant an opportunity of having these questions tested at law. This course the complainant may adopt of his own volition, without the assent or direction of equity. And if the judgments are opened or reversed at law, he will not require the further aid or direction of this court.

The only ground upon which equity can interfere by avoiding the judgments is, that the judgments are fraudulent as against the creditors of the corporation.

The alleged ground of fraud is, that the company being insolvent, the judgments were confessed to a director of the company for the purpose of giving him preference over other creditors having equally meritorious claims.

In considering this question, it will be assumed that the entire sum for which the judgments were confessed, was due from the corporation, and that there was no actual fraud in the transaction.

The mere fact that the creditor was a director of the company, does not render the transaction fraudulent. There is nothing which forbids either the members or directors of a corporation to make contracts with it, like any other individual; and when the contract is made, the director stands, as to the contract, in the relation of a stranger to the corporation. *The Pres't, M. & Co. of the B. & D. Turnpike Road* v. *Myers*, 6 *Serg. & R.* 12; *Gordon* v. *Preston*, 1 *Watts* 385; *Central Railroad* v. *Claghorn*, 1 *Speer's Eq. R.* 545; *Angell & Ames on Corp.*, § 233.

And corporations that have the power to borrow money, have also the necessary power, as well as the legal right, to give obligations for its repayment, in any form not expressly forbidden by law. *Curtis* v. *Leavitt,* 1 *Smith* 9.

The mere fact, therefore, that the security was given and the judgments confessed to a director, cannot destroy its validity. Nor can it be denied that a corporation, as well as an individual, may, independently of the statute, confess judgments in order to prefer creditors.

The objection results from the provisions of the statute. It is obvious that the policy of the statute for the prevention of frauds by incorporated companies, *Nix. Dig.* 371, is to preserve the entire property of an insolvent debtor for equal distribution among all its creditors. It declares all transfers of property made after insolvency, or in contemplation of insolvency, null and void as against creditors. It requires that in the payment of creditors and distribution of the funds of an insolvent corporation, the creditors shall be paid in proportion to the amount of their respective debts, excepting mortgage and judgment creditors, *when the judgment has not been by confession for the purpose of preferring creditors.* Its obvious requirement is, that where the judgment is confessed for the purpose of preferring creditors, the claim shall have no priority over other debts.

There is little controversy as to the facts of the case. The bill charges that at the time the bonds and warrants were executed, the company was insolvent, or on the eve of becoming so; and that its condition was well known to the officers of the company, and particularly to Allen, who was a director and the secretary of the company; and that the bonds and warrants were executed with the view of giving Allen a preference over other creditors. The answer does not deny that the company was insolvent, nor the defendant's knowledge of that fact, nor that the judgments were confessed for the purpose of giving him a preference over other creditors. The answer alleges that the defendant made loans and advances to the company, not knowing or

U *

believing that they were on the eve of bankruptcy. But the advances and liabilities for which the judgments were confessed, were made and assumed long before the confession of the judgments, or the giving of the bonds and warrants. Not a dollar was advanced, nor a liability assumed at the time. Previous to that time he had made large advances to enable the company to carry on its operations, but no advances whatever appear to have been subsequently made. From Allen's position as director and secretary of the company, he must have been fully acquainted with its financial condition and operations. The testimony of the president shows that at the time the securities to Allen were authorized, he believed that the Price mortgage would be foreclosed, and in that event the company could not continue its operations without further aid from Allen. The foreclosure was commenced, and no further aid was furnished by Allen. The company, in fact, suspended its business about the first of July. It is apparent that the officers of the company acted from no hope or belief that they could carry on its business, or redeem it from insolvency. They expected to stop payment, and the security to Allen was given in anticipation of that event. The confession of the judgments could only embarrass their operations, without aiding them. They obtained by it no aid in continuing their business. No additional funds were procured, no extension of credit obtained. A judgment confessed under such circumstances affords the strongest evidence that it was done in contemplation of insolvency, and with the view of preferring creditors. *Everett* v. *Stone*, 3 *Story* 453; *Arnold* v. *Maynard*, 2 *Story* 354; *Curtis* v. *Leavitt*, 1 *Smith* 111; *Freeman* v. *Deming*, 3 *Sandf. Ch. R.* 332.

I think the facts are satisfactorily established, that at the time of the execution of the bonds and warrants, upon which the judgments are confessed, the company was insolvent, or on the eve of insolvency; that its financial condition was well known to Allen, who was a director and the secretary of the company; and that the judgments were confessed in

contemplation of insolvency, for the purpose of preferring Allen over other creditors. The simple question is, whether, in payment of the creditors and in the distribution of the funds of the company, the judgment thus confessed is entitled to priority in payment over other claims against the company, or whether the debts are all to be paid proportionably. The statute does not declare the judgment void. It is not within the prohibition of the second section, and the fifteenth section simply regulates the distribution of the funds, and the mode in which the debts shall be satisfied. The resolution, under which the bonds and warrants were given, does not authorize the confession of a judgment, or the execution of a warrant for that purpose. It directs that the sum of $10,000 shall be secured by *bond and mortgage,* and authorizes the president to prepare an inventory of the tools and fixtures, to be given with the mortgage. If such security had been given by the company when insolvent, or in contemplation of insolvency, it seems clear that the mortgage would, under the provisions of the second section of the act, have been void as against creditors. It seems equally clear, under the provision of the ninth section of the act, that a judgment confessed under like circumstances can be entitled to no priority over other claims in the distribution of the funds. It is difficult to imagine what operation can be given to the ninth section of the act, if it cannot be applied for the protection of creditors in a case like the present, where the evidence of the insolvency of the company, and the purpose of confessing the judgment, is so strong, and where the creditor, in whose favor the judgment is confessed, is an officer of the corporation, fully acquainted with its financial condition. It was earnestly insisted upon the argument, that Allen, being a director of the company, and in case of its insolvency, a trustee of the property for the benefit of its creditors, was disabled in equity from acquiring priority over other creditors by taking a judgment in his own favor. That his conduct in taking the judgment was not only in violation of the policy of the statute, but was an abuse of his

official character as trustee, which rendered the judgment in his favor, fraudulent and void as against creditors. I deem it unnecessary to express any opinion upon this point. It is clear from the evidence, that the debt for which the judgment is confessed, was honestly due, and the ends of justice will be fully answered by declaring that in the distribution of the funds of the corporation, the judgment shall be paid proportionably with the other debts. Nothing could be gained by declaring the judgment void, and compelling the defendant to prove his claim before the receiver.